25-1341. Good morning. My name is Noel Starrett with Alliance Defending Freedom. We represent the families in this case. May it please the court. Our families have simply asked Jeffco not to room their children with the opposite sex on overnight school trips without notice or their consent. They just want their children to have the same opportunity to participate fully in overnight activities and athletic trips without being excluded, penalized, or isolated. They are not asking Jeffco to scrap its policy, exclude any students, or reveal any students' private information. As District 49's amicus brief demonstrates. You're not asking to reveal private information, but you expect them to check the private information to determine whether or not a student is participating in activities transgender. Am I correct about that? Correct, Your Honor. The school district has record of student sex. They request the birth certificates. So the school district has access to information that the parents don't. So when the parents don't have the information that they need to figure out who's going to be assigned to room with their children, it's incumbent upon the school district, therefore, to use the information that it has to ensure that our student plaintiffs aren't roomed with the opposite sex. But they claim that they don't have that information. Now, we're here on dismissal of the complaint, but how do you respond to that? Well, two ways, Your Honor. First, we are here on a Rule 12b6 dismissal. We've alleged that they know the sex of the students, and so this court has to take the facts as alleged in this plea. Even on the fuller record, though, and I think District 49's amicus brief. This is relating to the injunction? Yes. Even District 49's amicus brief demonstrates the Colorado school district's lack of evidence to track the legal sex, and there's no evidence of the record where a school, JFCO hasn't put any evidence in the record that any child or student enrolled in JFCO has changed their birth certificate, even in light of the Colorado's new law. And even under this policy, for the transgender student's policy to come into play, a student's got to essentially self-disclose, saying that, I would like to room consistent with my asserted gender identity. JFCO contends that it rooms all students according to its gender identity, but that's just an argument, and that's not evidence. When you look at their policy, gender identity is a big umbrella that incorporates a whole host of different genders, including non-conforming. So when JFCO has male and female bunkhouses, where do you put the student that that doesn't identify as a male or female? Well, what happens is it really comes down to the fact that this is an individualized decision that trip leaders make in advance of these trips. And that's what we're asking for, is the parents have a right, when you're going to make the consequential decision, to put a child in a bunkhouse or a shower facility with the opposite sex, and the school has that information, JFCO can't cut parents out of that decision. This is not a trivial decision, this is a consequential one, under Mirabelli, which says that parents have a right to be participating in that consequential decision. And that's really all we're asking for, is for JFCO to use the information that's already available to it, that's available to the school districts in Colorado. And I think it's the fact that another school district does this, balances the rights of transgender students to equally participate, and the constitutional rights that may have opposition to students of the opposite sex sharing rooms. This does not have to be a zero-sum game. We don't want to exclude any children. All children should be comfortable with whom they're forced to sleep next to or shower in front of. And so that would be our position, is that not only is our request simple, is they already have the means by which to accomplish what we're asking. We would also just want to point out that JFCO also makes the argument that it accommodates our student plaintiffs. It's just simply not true. And I think you can take a look at and measure the accommodations that they offer our students against the transgender student's policy. When it comes to the transgender students, they have four express goals in the policy that identify how they're to accommodate transgender students. They are to maximize their social integration and ensure their equal participation in overnight activities. Well, when it comes to our students and their religious beliefs and accommodating their convictions, you can look at page 29 of the response brief. They tell you what the accommodations they offer us, which is exclusion from overnight activities, day participation, or forgoing trips altogether. Well, that's not an accommodation. Any parent can tell you when talking to their child who wants to go on the overnight trip with their classmates or go on the varsity basketball trip with their teammates that it's a penalty to have to stay home. It's a penalty to miss out on outdoor lab. I would highlight the Brinkman's case in particular because both parents had attended the outdoor lab as children. They loved the whole experience. They wanted their daughter to have the same overnight activities with their classmates. It's a rite of passage for these children to enjoy the amazing campuses that Jeffco has out in the mountains. And lo and behold, they had to tell her you can't go. Well, that's not an accommodation at all. Any purported accommodation that strips students of equal participation in overnight activities is no accommodation at all. And in fact, it led to not only the loss of an irreplaceable activity like outdoor lab, it also cost the Brinkman's a lot of money just to help facilitate their daughter's participation only during the day. So there's harm there. And moreover, I'll return back to this consequential decision. When the school district's the only entity that has the information needed, parents are in the dark. Counsel, one thing you haven't really talked about at all yet is the law. And let's talk about it. In the Mahmood case, the parents sought to have their children opt out of the classroom storybook part of the curriculum. Does the school allow the parents to opt out of the overnight trips? Yes, they can forego the entire trip. Isn't that all that the parents were asking for in Mahmood? No, I think that's apples to oranges. Why? Because I think it's akin to telling the Mahmood parents that they have to opt out of the entire class rather than just the specific thing that is the burden. The burden in Mahmood was the reading of specific storybooks. So Mahmood says that you had to provide notice of the specific storybooks that are going to be read and the ability to opt out of the storybook. Counsel, parents weren't asking for an accommodation in Mahmood. They were asking for an opt-out. The board said you can't, we're not offering an opt-out. That's as far as the court went in Mahmood. I think the burden here is worse than in Mahmood. But Counsel, was there an opt-out offered in Mahmood? No, Mahmood. And is there an opt-out offered here? Not apples to apples opt-out. Counsel, can the parents opt out? I understand your argument about the value of participating in the activity. I'm just asking the question, can they opt out of the overnight activity? They can keep their child home from the overnight activities. There's nothing that's forcing them to send their children. And I understand the problem with that, that the children would like to participate in the activity. But I want to see how far you get under the law. Because Mahmood took a significant step from Yoder, but the case was about the prevention of an opt-out. And again, I think it's... And so aren't you asking for an extension of Mahmood? You know, here the school district is offering alternatives. They weren't even offering alternatives in the Mahmood situation. No, but I would say that this case hinges on the fact that what we are seeking out an opt-out of is the opposite sex rooming assignments. Our children don't want to be opted out of overnight activities. They don't want to be opted out of varsity basketball. The Perlman's daughter wants to participate in overnight basketball. That is, so you're treating the students, the transgender students, are entitled to full... I'm just asking, counsel, could you just address, would we be extending Mahmood? No. If we find in your favor here? No, I don't believe so. Instead, I would say that this is, the burden imposed on Mahmood is not as great as it is here. Instead of reading storybooks to children that talk about children of the opposite sex sharing a bathroom, and that's what was happening in Mahmood, we actually have Jeffco's policy which forces children to live that out in hotel rooms and bunkhouses and in shower facilities far away from parents. So the burden here, much like it was in Mirabelli, is actually a greater intrusion and burden on the right of parents to direct the religious development and care of their children. And I would like to also turn... I have a follow-up question on that. When you said that they have the ability to opt-out, I guess I don't necessarily understand that they do, because in this case, unlike in Mahmood, they aren't really getting notice that their children will be placed with a child of the opposite sex at birth. They're just basically getting notice of the policy and that it may happen. So they don't necessarily know, as did the parents in Mahmood, what to do. They don't know if their children are going to be placed with someone or not. Do they take the chance or don't they? Isn't that kind of different here too? Correct. Yeah, and I think maybe... And does that work in your favor? It certainly does. And I think that, you know, what we have here is what Mahmood forbids, which is conditioning the receipt of a public benefit, which is these trips, these outdoor lab trips, the varsity basketball trips. And if you're... Mahmood says you cannot condition the receipt of that benefit on the plaintiff's willingness to accept a burden on the religious exercise. And I believe that unconstitutional conditions doctrine also applies to the fundamental parental right, which is you cannot have, you know, just some statement. And the facts, as alleged in the complaint, make clear that parents don't even have notice of the policy. Right. It's really a notice issue as much as it is an ability to opt out once you get... What I'm saying is the notice that they're getting isn't really notice that their child is going to be placed in this position. It's simply that, oh, by the way, your child might be placed in this position. Right. And that's insufficient under Mahmood. So you have to make this decision not even based on knowing for sure, as the parents were going to do in Mahmood, that the textbooks, storybooks would be used. Right, Your Honor, exactly. And under Mahmood, the notice required was of the specific storybook and when it was going to be read. Here, Jeffco refuses to provide parents that notice about the specific grooming assignment and the burden that would incur. So that's... And that impermissible choice has already been played out with the Pearlmans, with the Brinkmans. And it leaves you in a situation, only because the Brinkmans knew what was going on with the Wales clients and they saw that. Do we take the risk of sending our daughter to outdoor lab when Jeffco will not notify us if they've assigned my daughter to share a bunkhouse with a male student or a male counselor and Jeffco will not agree or guarantee that my daughter will only be put in a bunkhouse with all girls. That net notice problem is front and center in this case. Mahmood requires a far greater level of specificity in the notice than what Jeffco offers here. Jeffco says, well, we give you notice because we tell you that there's a policy in the handbook or we put in online. That's not sufficient under Mahmood. I see that I'm eating into my rebuttal time. I'd like to reserve the balance of my time for my rebuttal. Mr. Olson. Good morning. May it please the court. Eric Olson on behalf of Jefferson County Public Schools. I think the questions from Judge Hartz and Judge Matheson identified the core issue in this case. Plaintiffs seek relief that far exceeds the relief granted at Mahmood and Yoder because they seek to change the way that the school district interacts with every student under its care rather than just accommodate the specific needs of the students who raise the free exercise concern. Well, let me ask a question about that because I believe Mahmood is stating a more general principle than just allowing an opt out. It suggests that when the school system does something that burdens a parent's right to guide the child's religious upbringing, then there has to be a strong reason to allow it. Here, the burden on the parents is that their child may be assigned to the same bedroom as a person of a different biological sex. The question then is, how can you justify that? With Mahmood, the burden was exposing the children to literature that the parents thought was contrary to religious beliefs. And the burden was removed by allowing the students to drop out, to opt out, I should say, of that. And that's all they asked for is now there's no burden on our religious upbringing of our children. Here, there is that burden. The burden is the parents can't their children participate in these activities. That strikes me as a burden that needs to be justified. And I was asking questions about whether it's doable and so on. And you can respond to that. But isn't the principle that there is a burden on the parents' religious upbringing of their children and therefore you've got to justify that? So I would say three things, Judge Hartz in response. The first is, is that there's a long line of cases that Mahmood makes clear remain intact, that parents do not have the ability to direct school curriculum or decisions. And I would point your honor to Judge Larson's concurrence in the Dovey Bethel case out of the Sixth Circuit. It interprets a similar challenge to a bathroom policy under Mahmood and makes clear that because there may be a burden there and unlike the majority in that case that said there's a curriculum, non-curriculum divide in Mahmood, she does not take that on and says even in those circumstances where there's a notice and opt-out, strict scrutiny doesn't apply and she upholds the policy. So the first point is that Mahmood I don't think sweeps so broadly and they're very explicit in the case itself that they don't give parents a right to choose school policy or curriculum. Judge Larson's concurrence operationalizes that in a similar case. I'd direct your honors there. The second point I would make is that there is an ability to opt-out and to your questions, Judge Moritz, there is notice of this possibility but because we don't know student sex assignment birth, we can't keep a roster and say that there may be this. The allegation is that you do know that and this is a motion to dismiss stage. So I would respond in two ways to that which is first District 49's brief. The reason that we don't know is that Colorado law allows you to change even your birth certificate, the gender on your birth certificate and it shows it can't be altered. District 49's brief doesn't even cite that law. Their view is their view and they're entitled to their view but state law prohibits the notification of an alteration on a birth certificate and this court can take judicial notice even on a Rule 12 of Jeffco's public policy of what you require to register and this is at Appendix 153 that they have a public statement by the school district that says you can use all of these different documents to register and none of them require that the display of the sex assignment birth and then if you look past the Rule 12 to the preliminary injunction issue here on the Wales trip there was no allegation that Jeffco knew the sex assigned at birth of the four children in that room. As soon as the issue arose. I'm sorry say that again. There's no evidence that what? There's no on the preliminary injunction record. Yeah. There's no evidence that Jeffco knew of the sex assigned at birth of the four children in the hotel room. Was there any evidence to the contrary? There was no evidence regarding that at all. There's no evidence at all that Jeffco knew that that student was transgender. And whose burden is that then? Is it your burden to say we can't do anything about the impact on the parents upbringing of their children? Or is it your burden? I'm sorry is that your burden to say you can't do anything about that because you just don't know? It's plaintiff's burden on a preliminary injunction motion. They seek an injunction that is sweeping. Unprecedented in any case I found anywhere in the country and the specific language of what they seek is an order requiring, get the exact language, the Jeffco to not share facilities with students of the opposite sex on upcoming school trips. Period. Yeah. It's not even what they want. And you're saying we can't do it. We can't do that despite that burden. And then is it your factual burden to show that you can't do it? No. On a preliminary injunction, plaintiffs have the burden to show that they're entitled to the relief that they seek. And if the court has any doubt about this, so it's their burden. I'll be clear. The cause of action there can be shifting burdens on particular elements here. And I'm not sure where the burden is, but I don't think it's necessarily on the burden of the party seeking the injunction. If you discriminate on race, they say enough. The complaint says enough by saying you're discriminating on race. Then you can say, but because of the dangers of gang violence in prison, we can discriminate on the basis of race or something like that. But that's a totally different circumstance that we have here because plaintiffs are asking for us to change the policy with regard to every student we have in our school. Do we have over 70,000 students? No, no, no, no. They are because they require us. Let's talk about, it's your burden to show that this was narrowly tailored. And they're suggesting, and they allege it was not narrowly tailored. And you're wanting to jump ahead and talk about, well, yeah, maybe we can figure it out for almost all the students, but there might be this one student who might have changed their birth certificate before there. And you're jumping ahead and talking about Colorado law and why you might not be able to do this or don't think you can. You're getting ahead of yourself here. They've alleged this is not narrowly tailored and there might be options for you to more narrowly tailor this. And I don't understand how we can jump ahead like you are and just slap down every possible tailoring possibility. So I say three things quickly, Judge Moritz. First, if there's any doubt about whether strict scrutiny applies here, this court needs to remand that there's a full record below 20 depositions. This issue has been fully developed on the facts, not before this court, because it happened after the preliminary injunction papers were briefed, but before it was decided. Well, but she decided at a most, the judge decided at the motion to dismiss stage. Correct. So that's what's before us. Correct. Right, right. So, you know, if there's concerns, if Your Honor believes... If we reverse it and remand it, there'll be further development, presumably, or you will say, well, we're ready for summary judgment motion now. But that's not really our concern, is to look at those facts now. No, I'm not asking you to. I'm saying that the proper course is to allow those facts to come out. Yeah. Second is that Mahmoud identified a very specific exception to when you go straight to strict scrutiny, and that exception is not found here because of the relief, as Judge Matheson pointed out, the relief obtained in Mahmoud is what happens today at Jeffco. Burns very... It seems to me this is really rather simple, at least after Mahmoud, because Mahmoud makes it clear that these parents have a constitutional right to guide the religious upbringing of their students, of their children. Part of that upbringing, part of what the parents want here is that their children are not in the same bedroom as someone of the opposite sex and not showering in the presence, maybe there's some partition, of someone of a different biological sex. And there seem to be simple solutions to that. Just don't do it. Don't put their child in the same bedroom as someone of the opposite biological sex. And then you have to say, but we can't do that. We don't have the information. It would be too disruptive. In Mahmoud, they said it would be too disruptive to allow all the kids to opt out. And that might be a good argument, but the Supreme Court rejected that. So here, you have to show why you can't do something that seems reasonably simple on its face. And you might have a good reason, but isn't that your burden at this point? Not at this point, Your Honor, because as Judge Moritz points out, we're here on a Rule 12 motion to dismiss where strict scrutiny was not analyzed or applied. But I would say two things. We could certainly reverse the dismissal at this stage, right? Of course, or vacate and remand. Are you conceding that we should reverse the dismissal of the complaint? No, but I certainly would prefer, and I think it would be a much better alternative, to reverse for a full development on a fully developed record than for this honor. That's exactly why you dismiss on this. Well, counsel, could I just ask you, did the district court consider facts from the preliminary injunction motion when it decided the motion to dismiss? Yes, the district court considered both alleged facts and facts before it on preliminary injunction. Why didn't that convert the motion to dismiss into a motion for summary judgment if the court's considering facts outside the four would give some support to that argument, and it could reverse for a full consideration on summary judgment. But the kinds of facts, for example, the kind of fact we've been talking about on the birth certificate, the court could take judicial notice of state law of statements, but yes, I agree. Here's what I'm getting. I'm getting it. I mean, you've said that since the dismissal, there's been full development of a discovery record. Is that correct? Well, since the briefing on the motion to dismiss, yes. Okay, and if the court is considering some facts outside the complaint, it seems like we're in summary judgment territory anyway, and the district court didn't even talk about Mammut. So it sort of puts the situation we have here in a peculiar posture. I would agree, and I would say that if the court remands, it just needs to make clear that there's freedom for the district court to develop those facts in full and not be cabined by some allegations or some rulings about how Mammut... That follows automatically if it's a summary judgment stage. Yeah, well, let me do an add-on here, which is coming back to Mammut and about your kind of getting ahead of the situation. Why doesn't Mammut require us to find that the complaint states a plausible claim for free exercise? I mean, it seems like a lot of your argument goes to remedy, preliminary injunction, and so forth, but let's maybe go back to the first part of all of this, which is, does the complaint state a plausible claim under Mammut? So I believe, again, I direct your honor to Judge Larson's concurrence in Dovey Bethel out of the Sixth Circuit that applied Mammut, and I think in that case, her analysis demonstrates where you have, as here, notice of the policy. There, there wasn't notice of particular students in a particular grade who might use a particular bathroom. It was notice of a policy and the opportunity to opt out. At the pleading stage, that does not violate Mammut. So my answer would be to look at Judge Larson's concurrence closely, and I think that is on all fours with our case here. But again, if your honors have any doubt about how this applies in practice, then yes, the proper approach is to remand for full development on the record before it. The last thing I would say, I think, is that what plaintiffs seek, again, is unprecedented in terms of changing how the school district interacts with all other students because of its, their free exercise concerns. Yoder didn't say you need to change the high school curriculum so Amish folks can send their kids to high school. Mammut didn't say you can't teach these books because some people don't like them. It said you have to give people an opt-out. And the notice... But the issue is burden. Are the parents burdened by this policy in their right to bring up their children in accordance with their religious beliefs? And the burden, as I mentioned before in Mammut, the burden was eliminated by allowing the students to opt out. Here, the burden isn't eliminated. They have a serious burden. The parents have to come and spend the night with them instead of the children being at the program. They can't attend certain parts of the program. Isn't that a burden? Yes, it is a burden, but it is a burden no different from the burdens faced in this court. This court addressed in Lee, for instance, that there someone want to attend school part-time and this court said no, you can't come in and pick school policy. Of course, there's a burden in some ways, but that doesn't end the question. The question is what are the parents trying to do with that burden? The question is whether you can satisfy them without screwing up the administration of the school. I would especially disagree, Your Honor, based on the way in which free exercise complaints... And again, Judge Larson addresses this question specifically, and you need to have the ability to opt out. That is what the free exercise clause requires. It's not about Mammut. I'm beating a dead horse. Go ahead. Is part of the burden, though, a financial cost? I'm sorry? Doesn't, I mean, isn't there a financial cost to the parents? Well, there's always a financial cost in the opt-outs, right? In Mammut, the parents had to get daycare for the kids that when they missed school because of the books. In Yoder, they had to go to the expense of teaching the kids themselves rather than have the school district do it for free. So I don't think that that alone answers the question. Isn't this just stigmatizing one group of students in order to save another group from stigmatism when these children have to, their parents have to opt them out, not knowing, not really having notice of whether they're going to be put in this position or not, but they can't take that risk. So they have the child either doesn't get to go, or they've got to be picked up at night at the parents' expense. That stigmatizes them on the basis of their religion. Not at all, Your Honor. And that's what Mammut says you can't do. I 100% agree that Mammut says that, but that's not the case here for three reasons. One is the opt-outs aren't just participate or not participate. It's choose your roommates. It's, I want to go and... It's not choosing roommates. They're not asking to choose their roommates. They're asking you not to put them in the position of having to make that choice. I understand, and I think the record will make clear that the issues of stigma are not at all as Your Honor posits here, but it's, the question is, is there stigma from saying I would like to room with these three people? No. Is there stigma that people, JFCO never asks the reason why anyone wants any of these accommodations. Some people... The kids do. Other kids do. Other kids say, why aren't you, why are you leaving at night? Why aren't you here? Why can't you spend the night? I mean, kids do that to each other, and that's what you're trying to prevent with this whole policy for trans students, which is understandable. So our first core value at JFCO is belonging. We want every student to belong. Our policies focus on having every student belong. In this case, we're focused on a policy that talks about how can we support transgender kids, but if you look at policy JB and policy AC, they talk about the importance of including everyone, including on religious beliefs. So concerns of stigma are candidly not before the record, not in the record, and on JFCO's policy, they want every student to thrive. That's what they do. They take every kid that belongs. The notion that by singling out students who are different, I mean, the stigma goes far in the other direction by forcing the identification of people who are different, which is what the net result of this policy is, but that's an argument for summary judgment. Again, I would just commend your honors to look at Judge Larson. She dealt with a similar issue. Sorry, I got one more question. Yeah, yes. You had mentioned earlier, you referred to a couple of cases on the bathroom policies. And I guess I don't understand how you can compare what the parents are being asked to do here necessarily to those cases. Isn't the burden on the parents here much greater in the sense that they're being asked, in the case of the 11-year-old child who's, you know, going on a trip far away from home, staying in a motel room with three other little girls her age, she thinks, and, you know, this is not the same, and not in a school setting. She's in a room, not directly under school supervision, with three other children, and the parents' concern should be greater, I would think, than it might be with some of the bathroom policies that have been litigated. So two things, this is a much more intimate experience, as well as the parents are conceding, I think, more responsibility to the school. Two quick things, Your Honor, I appreciate the extra conversation. First is, in the complaint, in this case, on that trip, as soon as the concern was raised, the situation... That was after the fact. I mean, that's what's alleged, and that's, you know, that's after the fact. I don't know how you can really minimize that at this point. That's not really what I'm asking anyway. Okay, well, I think a lot of the force of Your Honor's question... Her mother happened to be there. She was able to call her mother, who was a chauffeur. I mean, most kids aren't going to have a parent in the next room to dial up and say, I don't know what to do. Your Honor, I think the force of your question comes from the concern of it's different than a bathroom. The point is only that when a concern was raised, the concern was accommodated immediately. That doesn't really answer the question. And the second is that the cases that the plaintiffs, again, in the Doe v. Larson case of concurrence, rely on the very similar interests to what the plaintiffs claim here, and I would... I don't think there's a meaningful difference under the law in those circumstances, and particularly when there's such robust accommodations offered to the parents, to the students here, picking roommates, sleeping in a single, having one roommate different. And then when you compare that to how Jeffco can and does know what's happening with its students, it just doesn't pencil out in terms of a workable policy. But again, given Your Honor's concerns, we're happy to address these issues on remand with the District Court on the fully developed record. We appreciate the chance to have the conversation, and our sort of lasting request is that you not prejudge some of the hard issues the District Court may face on remand. Thank you very much. Has Jeffco Council essentially conceded what you want? Most of it, Your Honor. What else do you want? Yeah, just three points on rebuttal. First of all, this is not a curriculum case. My friend on the other side continues to refer to the Bethel case on the Sixth Circuit. Mayor Belli expressly rejected Bethel and the whole decision. We are not asking for a sweeping injunction is my second point. We're asking that Jeffco, and I started with this in the beginning, not ruin our student plaintiffs with the opposite sex. They can keep their policy. In fact, a policy that is nearly tailored to accommodate our plaintiffs won't harm anyone. In fact, the policy is a harm to all students. It wasn't fair for that transgender student in the D.C. trip to have to deal with this issue. The adults before the trips should be dealing with these situations. The parents need to be involved in the consequential decision as to whether or not a child be ruined with the opposite sex. They were cut out. They were left without notice. They were left without remedy. The harm was already done. So there are numerous ways to make this happen. There are numerous families and students in Jeffco, 75,000 students, that would welcome sharing a room or a hotel room with students of the opposite or transgender students. Here, though, we have student plaintiffs that that violates their deeply held religious beliefs. We're trying to mitigate that harm. Finally, I'll just close on this. The council wants this remanded or is open to this being remanded so that this could be decided on summary judgment. Great. We accept a reversal and remand, but we do believe a preliminary injunction should be entered because as mere belly makes plain, the protracted appellate process, while there's constitutional rights being violated, can be mitigated with a preliminary injunction. The preliminary injunction only determines that there's a likelihood of success. It doesn't prejudge the merits. We can take all the 20 depositions that we had fun taking last summer and bring that to bear on merits. Let me ask you about that because the likelihood of success and the merits seems to me may turn very much on facts that we don't have before us, such as the availability of information about a student's birth sex and the disruption this will cause. Can we really overlook those problems and say go ahead and issue a preliminary injunction without that information? I think that there's more than enough in the record on this because we do have, we put it in the verified. What we have in the record is your allegations and that's very important for the dismissal, but go ahead. No, but we also have verified allegations that are part of the preliminary injunction record about this, their knowledge, and Jeffco doesn't dispute that it tracks the legal sex of the students. So if you're tracking both the legal sex and the preferred gender, Jeffco will know when a student is being roomed different than their preferred gender identity or their legal sex. So we know already and also that this court can take judicial notice of the fact that District 49 does this. District 49 does not treat this as a zero-sum game. Both transgender students can be accommodated and our students and that's why we would ask for this to be remanded with instructions to preliminarily enjoin Jeffco from rooming just our student plaintiffs with the opposite sex using the information they already have at hand and if anybody, if any student comes for an accommodation under the transgender students policy asking to be accommodated, the Jeffco is on notice not to put them with our student plaintiffs. That's all we're asking. Let me raise one issue that we haven't addressed at all, but there's a challenge to the standing of one of your clients. Yes. Does that make any difference? If that client doesn't have standing, can't you raise every issue you want to? I mean, ordinarily if there's standing for certain people raising an issue and we don't care about whether other people raising identical issues have standing, do we need to address the standing issue? I think you're right in the sense that this court has to reach the merits of these claims based on under Rule 12B6, no matter what, because we have uncontested plaintiffs with standing to make those claims. But I would just simply state the Boast versus Illinois Board of Elections case makes the Perelman standing clear. They have a personal interest in it. Is it for us to say we don't have to address that? Well, I would appreciate it. I think the Perelman's in this courtroom would also appreciate this court recognizing their standing as well. Could I just ask you to elaborate on the point you were making a minute ago about the ability of the school district to know the student's gender identity or biological sex, especially in light of this Colorado statute? I'm not understanding how a school district can confidently know because of the statute, but maybe you could explain that a little more. Yeah, I mean, schools have separated students based on sex from time out of mind without doing invasive searches or DNA testing, but here we have it even more, right even from their own affidavit, which is that they request the birth certificates of the children so that they can track the birth sex. If a change happens in, you know, if a student is at Jeffco then changes their birth certificate, that will be reflected in their system. Moreover, there's other ways. What if it was changed earlier? Before they came to kindergarten, for example, your honor. Before they moved into the district. Well, there might be a remote chance that there's a student that does that, but that doesn't change the analysis for the fact that they've got 75,000 students, the vast, vast majority of whom their preferred gender identity is their sex. That's reflected on the birth certificate. So I don't think Colorado's law upends the entire analysis, and all we're saying is there's other school districts that use the tools they have available to make sure that parents are comfortable. In fact, there's many, many ways that parents can do this. They can ask the parents. So are you making kind of a de minimis argument then that this just isn't going to matter all that much, the Colorado law that has been adopted? I don't think that they can cite the Colorado law as an exception that eats the rule, that creates a situation where they just have to throw up their hands and we don't know any child sex. That's just not true. And in fact, many parents are happy to tell you that my daughter is a female and my son is a boy. And there's a lot of ways you can get parents to opt into these policies. You can get them to opt out of it. For different sports associations, parents have to disclose to the sports association if their child is a male or female. So with that, we would ask this court to remand with instructions to preliminary and join Jeff Goh for rooming our student plaintiffs with the opposite sex. Thank you. Thank you. Thank you, counsel. Case is submitted and counsel are excused.